UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. CUSTIN,<br><br>        Plaintiff,<br><br>v.<br><br>HAROLD J. WIRTHS, State of New Jersey Commissioner of Labor; JOSEPH SIEBER, GERALD YARBROUGH, JERALD L. MADDOW, New Jersey Board of Review; HILDA S. SOLIS, U.S. Secretary of Labor; SETH D. HARRIS, Acting U.S. Secretary of Labor, and JANE OATES, U.S. Assistant Secretary of Employment and Training Administration<br><br>        Defendants. | Civ. No. 12-910 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  This action was filed by John M. Custin, pro se, against the Commissioner of the New Jersey Department of Labor ("NJDOL"); three NJDOL officials who sat on its Board of Review (collectively with the Commissioner, the "State Defendants"); and the current and former United States Secretary of Labor and the Assistant Secretary of Employment and Training Administration (collectively, the "Federal Defendants"). Mr. Custin filed this action, which alleges constitutional and statutory violations, after a series of unfavorable eligibility determinations by the NJDOL, in which he was denied certain unemployment benefits. The State Defendants ask this Court to abstain from exercising jurisdiction, citing *Younger v. Harris*, 401 U.S. 37 (1971). The Federal Defendants move to dismiss Mr. Custin's claims for lack of subject matter jurisdiction and failure to state a claim. As explained below, I will deny the State Defendants' motion. I will grant the motion of the Federal Defendants, and dismiss Mr. Custin's claims against them.

## Facts and Administrative History

Mr. Custin worked at Wal-Mart from April 2008 through April 2010. His employment was terminated on April 26, 2010.

    i.    First Administrative Action

Following that termination, Mr. Custin filed a claim for unemployment benefits. On May 13, 2010, the NJDOL found him eligible.

Wal-Mart initiated an administrative action when it appealed Mr. Custin's eligibility determination to the Appeals Tribunal of the NJDOL. In a telephonic hearing, it claimed that Mr. Custin was a repeated no-show who did not call in his absences, pursuant to Wal-Mart's standard operating procedures. Mr. Custin claimed that there were problems with the call-in number and that Wal-Mart advised him he was "re-hirable" in his exit interview. The Appeals Tribunal found that Wal-Mart had discharged him for misconduct. It ruled that Mr. Custin was disqualified from receiving benefits, pursuant to N.J.S.A. 43:21-5(b), for the period from April 18, 2010 to May 29, 2010.

Mr. Custin appealed to the NJDOL's Board of Review, which affirmed the ruling of the Appeals Tribunal. He then appealed to the New Jersey Superior Court, Appellate Division, contending that he had been denied due process. The Appellate Division affirmed the Appeals Tribunal's disqualification finding, and declined to consider the due process issue because Mr. Custin did not raise it before the Appeals Tribunal.

    ii.    Second Administrative Action

Mr. Custin then initiated a short-lived second administrative action before the Appeals Tribunal. Based on the disqualification ruling in the first administrative action, NJDOL had requested that he refund $1,285 in benefits that he received in May 2010. Custin filed, but then withdrew, an appeal of NJDOL's refund request.

    iii.    Third Administrative Action

From May 29, 2010, through December 3, 2011, Mr. Custin received unemployment benefits up to the maximum amount of $6682, plus each allowable tier of "emergency unemployment compensation." Then, on December 4, 2011, he filed a claim for extended benefits. The NJDOL rejected this claim, pursuant to N.J.S.A. § 43:31-24.19(g), because Custin had not earned any wages since his initial claim in April 2010.[1] In December 2011, he appealed

---

[1] An individual who has been disqualified for regular benefits under the provisions of subsection (b) or (c) of R.S. 43:21-5 will not meet the eligibility requirements for the payment of extended benefits

2

this denial to the Appeals Tribunal, which affirmed that ineligibility finding in February 2012. He further appealed to the Board of Review, which remanded the matter for a new hearing. In September 2012, the Appeals Tribunal once again affirmed the ineligibility finding. Mr. Custin did not appeal this third administrative action to the Superior Court.

    iv.    Fourth Administrative Action

In March of 2012, Mr. Custin filed a 'transitional' claim, seeking benefits going forward, on the theory that he had now earned wages that would re-qualify him for benefits. The new alleged wages consisted of funds that he obtained through settlement of a separate discrimination lawsuit against Wal-Mart. The NJDOL rejected his claim. On March 28, 2012, he initiated a fourth administrative action by appealing this rejection to the Appeals Tribunal. On August 30, 2012, the Appeals Tribunal affirmed the ineligibility finding, finding that the funds he obtained in the settlement were not re-qualifying wages under NJSA § 43:21-4(e)(6).[2] Mr. Custin did not appeal further.

    v.    Fifth Administrative Action

Finally, on December 30, 2012, Mr. Custin filed a new claim seeking to establish a new "base year" on which to base further benefits. NJDOL reasoned that his eight weeks of work at Target Corp. in late 2012 did not constitute a sufficient number of "base weeks" and did not yield sufficient "base wages" to re-entitle him to unemployment benefits, and declared him ineligible on January 23, 2013. Mr. Custin appealed to the Appeals Tribunal. On March 19, 2013, the Appeals Tribunal affirmed the ineligibility finding.

Mr. Custin and the State Defendants dispute whether he further appealed that March 19, 2013 determination. The State Defendants contend that Mr. Custin appealed it by letter dated August 12, 2013. Mr. Custin vehemently denies this. The parties have placed the relevant papers before me, and I will make preliminary findings on this issue, for purposes of this motion. (*See* pp. 4-5, *infra*.)

---

    unless the individual has had employment subsequent to the effective date of disqualification for regular benefits **and** has earned in employment remuneration equal to not less than four times the individual's weekly benefit rate.

N.J.S.A. § 43:21-24.19(g) (emphasis added).

    [2] N.J.S.A. § 43:21-4(e)(6) provides: "The individual applying for benefits in any successive benefit year has earned at least six times his previous weekly benefit amount and has had four weeks of employment since the beginning of the immediately preceding benefit year. This provision shall be in addition to the earnings requirements specified in paragraph (4) or (5) of this subsection, as applicable."

3

### *The State Defendants' Motion to Dismiss*

The State Defendants offer a single argument in support of their Motion to Dismiss: that this Court must abstain from exercising jurisdiction over Mr. Custin's claims against them pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention is appropriate, they argue, because there is a pending state proceeding, judicial in nature, in which Mr. Custin can assert the same legal claims he brings here. Applying the *Younger* line of cases, I find the State Defendants' argument to be inadequate.

A federal court must abstain from exercising jurisdiction where 1) there is a pending state proceeding 2) implicating important state interests and 3) providing an adequate opportunity to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (citing *Younger*). As the moving party, the state bears the burden of demonstrating that these circumstances exist. *See, e.g., Durga v. Bryan*, 2010 U.S. Dist. LEXIS 106862, *7-8 (D.N.J. Oct. 5, 2010)(Brown, C.J.)("Axiomatically, the State, as the moving party, bears the burden of production and persuasion to prevail in the present motion. That burden is especially critical in the present matter, where the State asks this Court to sidestep its 'virtually unflagging' obligation to consider the pro se complaint of a plaintiff that asserts the denial of rights protected by the United States Constitution.")(quoting *O'Neill v. City of Philadelphia*, 32 F.3d 785, 794 (3d Cir. 1994)).

The "pending" state proceeding, according to the State Defendants, is Mr. Custin's purported appeal of the March 19, 2013 Appeals Tribunal decision in the Fifth Administrative Action, docket number 412,642. (Letter of Christopher M. Kurek filed Dec. 30, 2013 (Doc. No. 80)). Whether a state proceeding is pending is not ordinarily a difficult determination. Here, however, the administrative record is muddled. I conclude that there is no relevant, currently pending proceeding, for the following reasons.

The question is whether there is a pending appeal in the Fifth Administrative Action. That Action bears the docket number 412,642. Mr. Custin's letter of August 12, 2013 does not request any appeal; it does not refer to this this docket number; it does not mention the March 19, 2013 decision of the Appeals Tribunal. Rather, the letter requests permission to file certain documents and seeks the issuance of a subpoena to Wal-Mart prior to an August 22, 2013 hearing. Mr. Custin explains that his August 12, 2013 letter was sent in preparation for a hearing that the Appeals Tribunal scheduled for the following week on the 420,125 docket. He further explains that the 420,125 docket is a "mistaken docket," and that the hearing officer stated as much when Mr. Custin advised him that he was not appealing the March 19, 2013 decision. (*Id.* at p. 2).

Handwritten across the top section of the letter is the number "420,125." Nevertheless, NJDOL appears to have stamped the letter and made additional handwritten notations that the letter constituted an appeal of the March 19, 2013 determination under docket number 412,642.

The provenance of the "420,125" docket notation remains mysterious. When the State Defendants first filed this motion in August of 2013 (Doc. No. 44), they argued that 420,125 was the docket number of the currently pending state proceeding in favor of which they sought *Younger* abstention. They admitted, however, that they did not know what the proceeding was about. Now, the State contends that docket 412,642—the Fifth Administrative Action—is the currently pending proceeding for *Younger* purposes. On December 18, 2013, just days before the State Defendants filed their most recent letter in this matter (Doc. No. 80), the Board of Review issued a notice of appeal recognizing the existence of an appeal of the March 19, 2013 decision in 412,642. That notice attaches Custin's August 2013 letter. (Doc. No. 81 at p. 14).

The record, as I say, is muddled. This much, however, is clear from the documents—and the August 12, 2013 letter in particular. Mr. Custin never evidenced any clear intention to appeal the Appeals Tribunal's decision in the Fifth Administrative Action. I do not find any clear evidence that there is a currently pending state proceeding. The first prong of the *Younger* test is not satisfied.

Even if I found that the State administrative appeal was pending, however, I could not find that the third prong of *Younger* is satisfied. Such an appeal would not afford Mr. Custin the opportunity to pursue the constitutional claims raised in this action.[3] For example, Mr. Custin's allegations that he was denied due process and suffered the application of an allegedly unconstitutional statute (N.J.S.A. § 43:21-5(b)) pertain almost entirely to NJDOL's denial of initial benefits in 2010 (the subject of the now-ended First Administrative Action). The allegedly pending state appeal, however, relates to the Fifth Administrative Action and NJDOL's 2013 determination that Custin was ineligible for a new benefits base year commencing on December 30, 2012. The two proceedings involve separate facts, separate administrative determinations, and separate legal issues. In this action, Mr. Custin challenges the constitutionality of N.J.S.A. 43:21-5(b), which governed his initial disqualification based on his discharge for misconduct. Those issues are unrelated to the Fifth Administrative Action, which involved N.J.S.A. 43:21-4(e) and the calculation of a new base year. In short, even if the claimed appeal

---

[3] I entered a letter order (Doc. No. 78) requesting that the State Defendants address the issue of whether Mr. Custin's claims could be brought in any purportedly pending state proceeding. (*See* Letter of Kurek, Doc. No. 90). They have not done so.

5

were pending, it would not afford an opportunity for Mr. Custin to raise the constitutional claims asserted here, and would not satisfy the third part of the *Younger* test. *See Middlesex* at 432 (setting forth element of "adequate opportunity to raise constitutional challenges"); *Habich v. City of Dearborn*, 331 F.3d 524, 530-532 (6th Cir. 2003)(upholding District Court's refusal to abstain as proper, given that ongoing proceeding dealt with narrow issues unrelated to plaintiff's due process challenges to alleged procedural violations and other earlier actions by city, such that plaintiff's claims were collateral to the ongoing proceeding)(citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)(no *Younger* abstention where criminal defendant brings federal suit challenging length of pretrial detention, as that issue was not related to and could not be raised in his defense in the state proceeding)).

Accordingly, the State Defendants have not met their burden of demonstrating that *Younger* abstention is appropriate. Their motion is denied.

### *The Federal Defendants' Motion to Dismiss*

Mr. Custin's suit, insofar as it pertains to the Federal Defendants, challenges the decision of the United States Department of Labor (USDOL) to certify the NJDOL's unemployment compensation program, and alleges that a USDOL regulation, 20 CFR § 615.8(c)(2), is unconstitutional.[4] He names the former Secretary of Labor, the Deputy Secretary of Labor (who was at one point Acting Secretary), and an Assistant Secretary of Labor, not specifying whether he is pursing them in their personal or official capacities. (*See* Doc. No. 38).

The Federal Defendants, appearing in their official capacities (*See* Ltr. Of Karen Stringer (Doc. No. 79) at n.1), argue, *inter alia*, that Mr. Custin lacks standing to sue them because he has neither pled a sufficient connection between their alleged actions and his alleged injury, nor pled that his alleged injury would likely be redressed by the relief sought against them. (*See* Doc. No. 43 at pp. 18-22; Doc. No. 79).

---

[4] A disqualification [from benefits] in a State law, as to any individual who voluntarily left work, was suspended or discharged for misconduct, gross misconduct or the commission or conviction of a crime, or refused an offer of or a referral to work, as provided in sections 202(a) (4) and (6) of the Act...(2) As applied to eligibility for Extended Benefits, shall require that the individual be employed again subsequent to the date of the disqualification before it may be terminated, even though it may have been terminated on other grounds for regular benefits which are not sharable; and if the State law does not also apply this provision to the payment of what would otherwise be sharable regular benefits, the State will not be entitled to a payment under the Act and § 615.14 in regard to such regular compensation[.]

20 CFR § 615.8(c).

A plaintiff must establish his standing to sue under Article III of the United States Constitution. This 'constitutional standing' has three essential elements:

> (1) "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent', not "conjectural" or "hypothetical[.]""
> (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'"
> (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (U.S. 1992)(internal citations omitted). At the pleading stage, general factual allegations will suffice to discharge the plaintiff's burden. *Id.* at 561.

In addition, a plaintiff, particularly one challenging agency action, must show that he has "prudential standing." This requires a showing that the plaintiff is asserting his own legal interests, as opposed to those of a third party or the general public, and he must show that his "interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based." *Davis v. Philadelphia Housing Auth.*, 121 F.3d 92, 96 (3d Cir. 1997). The test is not demanding; it is meant only to screen out suits that are marginally related to or inconsistent with the purposes of the underlying statute. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012).

As discussed below, I find that Mr. Custin lacks standing to bring a claim challenging the USDOL's certification of New Jersey's program, but that he does have standing to challenge 20 CFR § 615.8(c)(2). As to that regulation, however, he has failed to state any cognizable cause of action, and has further failed to bring his facial challenge within the applicable statute of limitation.

*1. Improper Certification Claim*

I first examine Mr. Custin's claim that the Federal Defendants "abuse their discretion" by "continu[ing] to certify the state of NJ [unemployment insurance] program as compliant to federal law when it is not." (Third Amended Complaint (Doc. 38) at ¶1). That quoted statement is the only factual allegation

7

in the complaint regarding USDOL's certification of the New Jersey program.[5] I find standing to be lacking because there is no plausible allegation (a) that the federal government's conduct and the alleged injury are causally connected; or (b) that the relief sought (decertification of the State program) would remedy the claimed injury.

Plaintiff's claimed injury— denial of certain unemployment benefits— is apparent. (*Id.* at ¶¶ 1-14). Less apparent, however, is the alleged causal connection between Mr. Custin's injury and the Federal Defendants' certification of the NJDOL's unemployment insurance program. Such a causal connection is not set forth, even generally, in the factual allegations of the complaint. I am mindful that Mr. Custin is proceeding *pro se,* and I have read his complaint and motion papers with a liberal eye. The unexpressed assumption seems to be that the alleged injury would not occurred if the USDOL did not certify the NJDOL's unemployment benefits program as compliant. It is clear that the State denied benefits based on State law. The manner in which a compliant state program would have resulted in an award of benefits is not specified. The alleged connection between the claim and the injury is too remote and speculative to accept in the absence of plausible supporting factual allegations.

In that conclusion I am persuaded by the reasoning of a sister court in a similar case. In *Horack v. Minott,* the District of Delaware agreed with the Secretary of Labor that the plaintiff did not show any of the three elements of constitutional standing. 1995 U.S. Dist. LEXIS 7583, *11-16 (D. Del. May 26, 1995). After the Delaware department of labor denied benefits, that plaintiff brought a facial and as-applied challenge to the statute on which the ineligibility finding was based, and further argued that the USDOL should not have certified the state program. The District Court found that the denial was premised on the state's application of its own statute. Because "the federal government played no role in the decision of the State of Delaware to deny unemployment compensation to plaintiff there is an insufficient causal link between defendant [Secretary of Labor's] conduct and plaintiff's alleged injury." *Id.* at *12-14.

Here, too, the actual denials of which Mr. Custin complains were the product of the State's application of its own statutes. The federal government's certification of the state program is simply too far removed from the alleged injury to confer standing.

---

[5] The only other mention of the USDOL and certification is in the demand for relief: "an injunction to prevent further certification of the state of New Jersey unemployment program by the U.S. Secretary of Labor and barring the state against any further federal funding until the state of New Jersey is in conformity with the Constitution of the United States and the Social Security Act." (*Id.* at 'DEMAND').

8

If anything distinguishes this case from *Horack*, it is Mr. Custin's statement in his papers defending against this motion that he was denied procedural due process due to the failure to decertify (a claim that he has not pled). (Letter Brief., Doc. 81 at part II, p. 6). Again, it is difficult to understand why NJDOL's alleged procedural irregularities would not have occurred if USDOL had denied certification of the state program.[6] Lacking plausible factual allegations, I cannot find the requisite causal connection.

Closely related is another problem. Even if causation is assumed, I cannot find any reasonable allegation that the relief sought would redress Mr. Custin's injury. He seeks "an injunction to prevent further certification of the state of New Jersey unemployment program by the U.S. Secretary of Labor and barring the state against any further federal funding until the state of New Jersey is in conformity with the Constitution of the United States and the Social Security Act." (Third Am. Comp. (Doc. 38) at 'DEMAND'). This remedy would not restore his benefits. The immediate effect of the requested remedy would be to strip New Jersey's unemployment benefits program of funding. Were that to occur, neither Mr. Custin's nor anyone else's benefits would be paid by the State. *See Horack* at \*14-15. Mr. Custin's complaint does not specifically articulate how decertification would "compel [NJDOL] to amend its criteria for unemployment compensation benefits"—that is, to re-write the various state statutes under which his claims were rejected—in such a way as to ensure that he would receive benefits. *See id.* at \*15. The claim is a highly contingent one that I cannot accept without more specific factual allegations. The complaint falls well short of alleging that Mr. Custin's injuries would likely be redressed if this Court granted the relief sought. *See id.*

For these two independent reasons, Mr. Custin's challenge to the federal certification of the state unemployment insurance program fails for lack of standing.

### 2. Unconstitutional Regulation Claim

#### i. Standing

Mr. Custin's Third Amended Complaint alleges that the Federal Defendants "use an unconstitutional and absurd federal regulation [20] CFR [§] 615.8(c)(2)[.]" (Doc. 38 at ¶ 1). It demands "a declaration that 20 CFR § 615.8(c)(2) and [N.J.S.A. §] 43:21-24.19 are unconstitutional – laws which violate the intent of Congress in passing the SSA and are offensive to due process and which aggravate a disproportional loss already suffered on the original disqualification." (*Id.* at 'DEMAND'). These allegations are quite general and nonspecific, and there are no other factual allegations concerning this

---

[6] Except perhaps in the trivial sense that, but for federal certification, the State program might never have existed at all.

facial challenge to the regulation. That said, I consider the entire record before me to determine whether Mr. Custin might have standing.

Mr. Custin's letter brief suggests that this claim relates to his Third Administrative Appeal. In the Third Administrative Appeal, the NJDOL's Appeals Tribunal upheld the denial of extended benefits to Mr. Custin, finding that his failure to secure any employment since he was first discharged rendered him ineligible under N.J.S.A. § 43:21-24.19(g). (*See* 9/18/12 Decision of the Appeals Tribunal (Doc. No. 43 at Ex. E)). This denial of extended benefits seems to be what the Complaint refers to as the "aggravat[ion of] a disproportional loss already suffered on the original disqualification."

The challenged federal regulation states that "A disqualification [from benefits] in a State law...(2) As applied to eligibility for Extended Benefits, shall require that the individual be employed again subsequent to the date of the disqualification before it may be terminated, even though it may have been terminated on other grounds for regular benefits which are not sharable; and if the State law does not also apply this provision to the payment of what would otherwise be sharable regular benefits, the State will not be entitled to a payment under the Act and § 615.14 in regard to such regular compensation[.]" 20 CFR § 615.8(c). The regulation thus imposes a condition: state law "shall require" that certain disqualified individuals "be employed again" before their disqualification is terminated and they may recover extended benefits.

As it happens, the New Jersey statute under which Mr. Custin was found ineligible is somewhat stricter than the federal regulation requires. *See* N.J.S.A. § 43:21-24.19(g) (quoted at n.1, above). New Jersey's statute adds the requirement that the claimant, when re-employed, earn not less than four times his weekly benefits rate. *See* N.J.S.A. § 43:21-24.19(g). It appears that Mr. Custin would have been found ineligible even if the state statute exactly mirrored the less strict federal regulation. But federal law does set a floor beneath which state regulation cannot go. Thus, on the liberal assumption that Mr. Custin is challenging the constitutionality of that federal "floor," his injury may be 'fairly traceable' to the federal regulation, which interlocks with the applicable State statute. If the conditions on benefits imposed by the federal statute were deemed unconstitutional, then it is possible that analogous conditions in the State statute would fall as well. Therefore the relief requested (invalidation of the federal regulation) would likely redress his injury. And, of course, he also seeks invalidation of the State statute itself.

Under a liberal interpretation of these *pro se* pleadings, I find that standing has been adequately alleged as to the claim of unconstitutional regulation.

### ii. Failure to State a Claim

Included in the Federal Defendants' motion to dismiss is the argument that Mr. Custin "has failed to provide sufficient facts to show an entitlement to relief." (Br. in Supp. of Mot. to Dismiss at 22).

Mr. Custin's claims with respect to 20 CFR § 615.8(c)(2) seem to be that it violates (a) the Eighth Amendment, (b) the Due Process Clause of the Fourteenth Amendment, and (c) the "when due" clause of the Social Security Act, 42 U.S.C. 503(a)(1). The Federal Defendants respond that Mr. Custin "does not even assert whether he is claiming a violation of substantive or procedural due process[,] and the eighth amendment is clearly inapplicable. Moreover, the contested provision is based on requirements of the Extended Unemployment Benefits Act. 53 FR 27926, *27933."

To this portion of the Federal Defendants' motion I apply the usual standard for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The moving party, ordinarily the defendant, bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The question is whether the factual allegations are sufficient to raise a plaintiff's right to relief above a speculative level, to the point of being "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as here, the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

I first turn to the Eighth Amendment to the United States Constitution, which provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and usual punishments inflicted." The Supreme Court has stated: "Given that the Amendment is addressed to bail, fines, and punishments, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments." *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 262 (1989)(holding that excessive fines clause does not apply to punitive damages in a civil suit). At issue here is the USDOL's decision to require a formerly disqualified claimant to first be re-employed for at least some period of time before being eligible for extended unemployment benefits. That is obviously unrelated to bail. It does not constitute a fine, either. *See id.* at 266-68 ("[T]he history of the Eighth Amendment convinces us that the Excessive Fines Clause was intended to limit

only those fines directly imposed by, and payable to, the government."). Finally, the application of the Federal Defendants' regulation is not a punishment for a crime, let alone a cruel and unusual one. *See Gregg v. Georgia*, 428 U.S. 153, 172-173 (1976) (framing Eighth Amendment inquiry as whether, and to what extent, conduct may be formally punished as criminal); *Estelle v. Gamble*, 429 U.S. 97, 103 n. 7 (1976). Mr. Custin, therefore, has no cognizable claim under the Eighth Amendment.

Next, Mr. Custin appears to claim that 20 CFR § 615.8(c)(2), on its face, deprives persons of property without due process of law. (*See* Third Amended Complaint at ¶1). Without question, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause," and this includes government benefits. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Mr. Custin's assertion that the challenged regulation deprives persons of due process rings hollow, however. There is no allegation in the Third Amended Complaint that the regulation somehow strips away any of the standard procedural safeguards furnished by the rest of the Social Security Act, and the regulation is not susceptible of such a reading. Mr. Custin himself took full advantage of these procedures when he appealed the NJDOL's rejection of his application for extended benefits. Viewing the Third Amended Complaint as liberally as possible, I still am unable to extract any concrete factual allegation or articulated theory. The Court is left to speculate as to how 20 CFR § 615.8(c)(2) is alleged to work a deprivation of due process. Accordingly, I find that Mr. Custin has failed to state any cognizable claim under the Due Process Clause of the Fourteenth Amendment.

Finally, Mr. Custin's facially attacks 20 CFR § 615.8(c)(2) by claiming that it violates the Social Security Act's "when due" clause, 42 U.S.C. § 503(a)(1). (Third Amended Complaint at ¶1). Section 503(a)(1) conditions payments from the USDOL to state bodies (like NJDOL) on a finding by the Secretary of Labor that the state's law "includes provision for [] such methods of administration....as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). Again, the USDOL regulation challenged here requires states to condition the receipt of extended benefits on disqualified candidates' having first returned to work. I am unable to discern how that USDOL regulation is alleged to violate a Social Security Act provision that generally requires state bureaucracies to function properly. I find, therefore, that Mr. Custin has not alleged any cognizable legal claim concerning 20 CFR § 615.8(c)(2).

### iii. *Statute of Limitations*

Even if one or more of Mr. Custin's claims concerning 20 CFR § 615.8(c)(2) were sufficiently pled, it would be barred by the statute of

limitations. Because these claims are facial challenges to the regulation, the six-year limitations period began to run when the regulation was promulgated in 1988.

"Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401. The threshold question is when the "right of action first accrue[s]" in the context of a facial challenge to a regulation. In *Pennsylvania Dep't of Public Welfare v. U.S. Dep't of Health and Human Services*, 101 F.3d 939 (3d Cir. 1996), a plaintiff challenged the validity of a regulation, alleging inadequate notice and comment procedures. The Third Circuit held that such a claim accrued— and was also ripe for resolution— when the rule was promulgated. It affirmed a dismissal based on the statute of limitations. *Id.* at 944-47.

Logically, this accrual rule governs a facial challenge to a rule promulgated by an agency. "On a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register." *Dunn-McCampbell Royalty Interest v. National Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997) In *Dunn-McCampbell*, the Fifth Circuit stated that facial challenges have a six-year statute of limitations commencing when a rule is promulgated. *Id.* A fresh limitations period arises, however, when the agency subsequently *applies* the rule against a party who challenges such *application* on statutory or constitutional grounds. *Id.; see Wind River Mining Corp. v. United States*, 946 F.2d 710, 716 (9th Cir. 1991) ("a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's <u>application of that decision to the specific challenger</u>" (emphasis added)).

Here, Mr. Custin challenges the Constitutional and statutory validity of 20 CFR § 615.8(c) on its face, seeking a declaratory judgment. The issues he asserts arose at the time of promulgation, and were likewise fit for resolution immediately thereafter. *See Pennsylvania Dep't of Public Welfare*, 101 F.3d at 946-947; *Strahan v. Linnon*, 967 F. Supp. 581, 607 (D. Mass. 1997) ("plaintiff's challenge to 50 C.F.R. § 402.03 is such a 'policy-based' facial challenge in that his claim is that the regulation is plainly inconsistent with Congress' mandate in the ESA. Accordingly, the 'grounds for such [a] challenge[] [should have been] apparent to any interested citizen within a six-year period following the promulgation of the [regulation].'...*Wind River Mining [Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)] excuses litigants from the six-year requirement only when the challenger 'file[s] a complaint for review of the adverse application of the [regulation] to the particular challenger.' That exception does not apply to the plaintiff." (citations omitted)). Mr. Custin does not bring an 'as applied' challenge which might potentially accrue at a later date. *Cf. Dunn-McCampbell*, 112 F.3d at 1287; *Wind River*, 946 F.2d at 716.

I emphasize the distinction between a facial and as-applied challenge. A specific challenge to an actual application of the regulation against Mr. Custin by the Federal Defendants might entitle him to a "fresh" limitations period. It is an open question, whether a state decision pursuant to a state statute that conforms, as required, to federal law, can be said to be a fresh "application" of federal law. For present purposes, however, it is clear that Mr. Custin's challenges are facial in nature.

The contents of 20 CFR § 615.8(c) were published in the Federal Reporter on July 25, 1988. 53 Fed Reg 27937 (July 25, 1988). A facial challenge had to be brought within six years of that date. It has therefore been time-barred for over nineteen years.

### *Conclusion*

For the reasons set forth above, the State Defendants' Motion to Dismiss on *Younger* abstention grounds is **DENIED.** The Federal Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's claims against the Federal Defendants are hereby **DISMISSED WITHOUT PREJUDICE.** An appropriate order will follow.

_____
HON. KEVIN MCNULTY
United States District Judge

Dated: January 31, 2014
Newark, New Jersey