## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **JOHN M. CUSTIN,** | : | Civ. No. 12-910 (KM) |
|  | : |  |
| **Plaintiff,** | : |  |
|  | : | **MEMORANDUM OPINION** |
| **v.** | : |  |
|  | : |  |
| **HAROLD J. WIRTHS, et al.,** | : |  |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, John M. Custin ("Custin") brought this action alleging constitutional and statutory violations in connection with the process for applying for unemployment benefits. Following the termination of his employment with Walmart in April 2010, Custin sought eligibility for COBRA health benefits and biweekly unemployment benefits. Custin's five applications to the New Jersey Department of Labor ("NJDOL") were denied. He filed unsuccessful appeals of those determinations with the Appeals Tribunal and Board of Review. Custin also appealed one of those administrative actions to the New Jersey Superior Court, Appellate Division, which affirmed the denial of eligibility. Custin then filed suit in this Court against the Commissioner of the NJDOL, Harold Wirths, and three officials who sat on the Board of Review, Joseph Sieber, Gerald Yarbrough, and Jerald Maddow (collectively, "State Defendants"), as well as the current and former United States Secretary of Labor, and the Assistant Secretary of Employment and Training Administration (collectively, "Federal Defendants").

On January 31, 2014, I granted the Federal Defendants' motion to dismiss the Third Amended Complaint, but denied the State Defendants' motion that I abstain from exercising jurisdiction under the doctrine of *Younger*

1

*v. Harris*, 401 U.S. 37 (1971). (ECF no. 83) Although my dismissal was without prejudice, Custin has not filed another amended complaint, so the Third Amended Complaint remains the operative pleading. (ECF no. 38) (References herein to the Complaint ("Compl.") are to the Third Amended Complaint.)

Now before the Court is the State Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF no. 94) Because I write for the parties, I write briefly and assume familiarity with the case. This Opinion should be read in conjunction with my earlier, more detailed Opinion in this matter (ECF no. 84). For the reasons set forth below, the motion is granted in part and denied in part.

**LEGAL STANDARD**

The State Defendants have moved to dismiss the complaint for lack of jurisdiction, citing the *Rooker-Feldman* doctrine. Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

The State Defendants have also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party,

bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### A. Application of the *Rooker-Feldman* Doctrine

I deal at the outset with the State Defendants' argument that this court lacks subject matter jurisdiction over the action because Custin's claims are barred by the *Rooker-Feldman* doctrine. Under that doctrine, lower federal courts may not adjudicate federal claims that were previously adjudicated in state court or are inextricably intertwined with a state court decision. *See District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149

(1923). A federal claim is inextricably intertwined with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS v. Allegheny Cnty. Ct. of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996). The *Rooker-Feldman* doctrine precludes the exercise of subject matter jurisdiction "where a federal action would be the equivalent of an appellate review of a state court judgment." *Hogg's v. New Jersey*, 352 F. App'x 625, 629 (3d Cir. 2009). The doctrine is applied where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517 (2005). However, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010).

Here, Custin does not complain of injuries caused by the state court judgment; rather, he complains of due process violations during the NJDOL administrative proceedings, which preceded the state court judgment, and asks for an injunction to avoid future abuses. It is true that the state court decision did analyze Custin's due process concerns and find them to be without merit. The state court judgment, however, is not itself the source of his claimed injury, and it does not seem that Custin seeks review and rejection of the state court judgment. Accordingly, I find the *Rooker-Feldman* doctrine inapplicable to the claims here.

## B. Immunity

The State Defendants argue next that they are immune from suit: the N.J. Department of Labor because it is a state entity protected from suit by the Eleventh Amendment, and the individual defendants because they have qualified immunity for their actions as members of the Board of Review.

### a. Department of Labor Immunity Under the Eleventh Amendment

It is axiomatic that under the Eleventh Amendment, "nonconsenting states may not be sued by private individuals in federal court unless Congress abrogates the state's immunity pursuant to a valid exercise of its power." *Hogg's*, 352 F. App'x at 628 (citing *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64, 121 S.Ct. 955 (2001)). Thus, even in actions where the state is not a named party, where the state is deemed to be the real party in interest, a suit will be barred by the Eleventh Amendment. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 25, 429, 117 S.Ct. 900 (1997)). To determine whether a suit against a state entity is a suit against the state, courts are to consider the following factors: (1) whether the source of the money to pay a judgment would be the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy. *Fitchik v. N.J. Transit Rail Ops., Inc.*, 873 F.2d 655, 659 (3d Cir. 1989).

As to the New Jersey Department of Labor, the outcome of the analysis is obvious. The DOL is a department of State government:

> We agree with the District Court's finding that any judgment against the State of New Jersey, the New Jersey Department of Labor and Workforce Development, or the Division of Workers' Compensation would be paid by New Jersey's state treasury. Dist. Ct. Op. at 13–15. Because the State of New Jersey was thus the real party at interest, the District Court properly held that these entities are immune from a suit seeking money damages

*Hogg's*, 352 F. App'x at 628. Personnel of the Department of Labor, sued in their official capacities, are likewise shielded from claims for damages by the Eleventh Amendment. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).

The immunity does not, however, extend to individual state officers sued in their individual capacities. Nor does it prevent them from being sued for prospective injunctive or declaratory relief to end continuing or ongoing

violations of federal law. *Id.*; *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908).

Accordingly, the complaint will be dismissed against the NJDOL, as it is immune from suit under the Eleventh Amendment. As for the individual defendants, Custin has not specified whether he is suing them in their personal or official capacities. Affording this pro se complaint a liberal reading, however, I find that Custin has pled claims against the individual State Defendants in their individual capacities, and I decline to dismiss the suit against them on Eleventh Amendment grounds. I will, however, consider if they are subject to qualified immunity.

### b. Individual Defendants' Qualified Immunity

The doctrine of qualified immunity "shields government officials from suit even if their actions were unconstitutional as long as those officials' actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). Courts employ a two-part inquiry to determine whether a state official is entitled to qualified immunity:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). Clearly established means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).

Here, Custin alleges that his due process rights were violated in the administrative review process to determine his eligibility for medical benefits. The parties do not dispute that medical benefits are a property right, the denial

of which necessitates fulfilling the requirements of due process. *See Wilkinson v. Abrams*, 627 F.2d 650, 664 (3d Cir. 1980) ("State statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process."). Custin claims that he was denied due process because (1) he was not provided proper notice of a hearing, (2) he was not provided with copies of documents used against him at that hearing, and (3) the Board of Review failed to appropriately evaluate the evidence.

The question here centers on whether a reasonable official on the Appeals Tribunal and Board of Review would have understood that these failures violated due process. That raises factual issues that cannot be disposed of on a motion to dismiss. I therefore will deny the motion to dismiss the complaint based on qualified immunity, but without prejudice to reassertion of qualified immunity *via* a motion for summary judgment.

### C. Failure to State a Claim

The State Defendants move to dismiss the complaint on the grounds that it is vague and conclusory as to the relief sought and because there are no allegations in the complaint relating to any act or omission by any of the individual state defendants. (Br. at 6, 19) Although it is true that the complaint fails to specifically name the individual state defendants when describing the allegedly unconstitutional actions, this pro se complaint requires a more liberal reading. "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir. 1997). In that spirit, the complaint should be construed such that Custin intends to refer to Commissioner Wirths when he alleges actions or omissions by NJDOL and to Sieber, Yarbrough and Maddow in the allegations relating to the Board of Review. Custin's claims seem to be that the NJDOL and the Board of Review violated (a) the "when due" clause of

the Social Security Act, 42 U.S.C. § 503(a)(1), (b) the Eighth Amendment, and (c) the Due Process Clause of the Fourteenth Amendment.

1. Social Security Act Claim

Custin appears to attack Section 43:21-5(b) of the New Jersey Unemployment Compensation Law, and Section 43:21-24.19 of the New Jersey Extended Benefit Law, as violative of the "when due" clause of the Social Security Act, 42 U.S.C. § 503(a)(1). (Compl. p. 6) As previously explained, the "when due" clause conditions payment to a state on that state's having laws which "include provision for [] such methods of administration...as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). (See ECF no. 92, Opinion at 12)

Custin challenges N.J.S.A. § 43:21-5(b), which provides that an individual suspended or discharged for misconduct is ineligible for unemployment benefits for a certain number of weeks thereafter.[1] Custin

---

[1]     The full text provides:

For the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the seven weeks which immediately follow that week, as determined in each case.

For the week in which the individual has been suspended or discharged for severe misconduct connected with the work, and for each week thereafter until the individual becomes reemployed and works four weeks in employment, which may include employment for the federal government, and has earned in employment at least six times the individual's weekly benefit rate, as determined in each case. Examples of severe misconduct include, but are not necessarily limited to, the following: repeated violations of an employer's rule or policy, repeated lateness or absences after a written warning by an employer, falsification of records, physical assault or threats that do not constitute gross misconduct as defined in this section, misuse of benefits, misuse of sick time, abuse of leave, theft of company property, excessive use of intoxicants or drugs on work premises, theft of time, or where the behavior is malicious and deliberate but is not considered gross misconduct as defined in this section.

In the event the discharge should be rescinded by the employer voluntarily or as a result of mediation or arbitration, this subsection (b) shall not apply, provided, however, an individual who is restored to employment with back pay shall return any benefits received under this chapter for any week of unemployment for which the individual is subsequently compensated by the employer.

If the discharge was for gross misconduct connected with the work because of the commission of an act punishable as a crime of the first, second, third or fourth

argues that this provision inconsistently allows the NJDOL to deny eligibility for unemployment benefits to people who were discharged for misconduct but whom the employer determined would be rehireable, as was the case with Custin himself. I fail to see any serious inconsistency, but that is not the point.

The relevant provision of the Social Security Act requires only that a state's administration methods reasonably provide for the payment of unemployment benefits when due. NJSA § 43:21-5(b) is directed to that end: it defines when unemployment benefits, in certain circumstances, are or are not due. Custin's real objection is that, in his circumstances, under the statute, benefits were not "due" him. That is a very different issue. I cannot discern from the complaint the basis for a complaint that the statute fails to conform to the Social Security Act's general mandate that State procedures be designed reasonably to insure full payment of benefits *when* due.

Custin also challenges N.J.S.A. § 43:21-24.19, although it is not clear which subsection he takes issue with.[2] Custin's claim appears to be that the

---

degree under the "New Jersey Code of Criminal Justice," N.J.S.2C:1-1 et seq., the individual shall be disqualified in accordance with the disqualification prescribed in subsection (a) of this section and no benefit rights shall accrue to any individual based upon wages from that employer for services rendered prior to the day upon which the individual was discharged.

The director shall insure that any appeal of a determination holding the individual disqualified for gross misconduct in connection with the work shall be expeditiously processed by the appeal tribunal.
N.J.S.A. § 43:21-5(b).
[2]     The full text provides:

a. Notwithstanding the provisions of section 6 of P.L.1970, c. 324 (*C. 43:21-24.12*) an individual shall be ineligible for payment of extended benefits for any week of unemployment in his eligibility period if it is determined during such period:

(1) The individual failed to accept any offer of suitable work as defined in paragraph c. or failed to apply for any suitable work to which the individual was referred to by the employment service or the director; or

(2) The individual failed to actively engage in seeking work as prescribed under paragraph e.

b. Any individual who has been found ineligible for extended benefits by reason of the provisions in paragraph a. of this section shall also be denied benefits beginning with the first day of the week following the week in which the failure occurred and until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned remuneration equal to not less than 4 times the individual's weekly extended benefit rate.

c. For purposes of this section the term suitable work means, with respect to any individual, any work which is within such individual's capabilities; this work shall be held to be suitable only:

(1) If the gross average weekly remuneration payable for the work exceeds the sum of: the individual's weekly extended benefit rate as determined under section 8 of P.L.1970, c. 324 (*C. 43:21-24.14*), plus the amount, if any, of supplemental unemployment benefits (as defined in *Section 501(c)(17) of the Internal Revenue Code of 1954*) payable to the individual for the respective week;

(2) If the position pays wages not less than the higher of

(a) The minimum wage provided by Section 6(a)(1) of the Fair Labor Standards Act of 1938 *(29 U.S.C. 206)*, without regard to any exemption; or

(b) The applicable state or local minimum wage;

(3) Provided, however, that no individual shall be denied extended benefits for failure to accept an offer of or apply for any job which meets the definition of suitable work as described above if:

(a) The position was not offered to the individual in writing or was not listed with the employment service;

(b) The failure could not result in a denial of benefits under the definition of suitable work for regular benefits as provided under subsection (c) of *R.S. 43:21-5* to the extent that the criteria of suitability in that section are not inconsistent with the provisions of this paragraph c.;

(c) The individual furnishes satisfactory evidence to the division that his prospects for obtaining work in his customary occupation within a reasonably short period are good. If the evidence is deemed satisfactory for this purpose, the determination of whether any work is suitable with respect to the individual shall be made in accordance with the definition of suitable work for regular benefit claimants as provided under subsection (c) of *R.S. 43:21-5* without regard to the definition specified by this paragraph c.

d. Notwithstanding the provisions of section 6 of P.L.1970, c. 324 (*C. 43:21-24.12*) to the contrary, no work shall be deemed to be suitable work for an individual which does not accord with the labor standard provisions required by *Section 3304(a)(5) of the Internal Revenue Code of 1954* and subsection (c) of *R.S. 43:21-5*.

e. For the purposes of subparagraph (2) of paragraph a. of this section, an individual shall be treated as actively engaged in seeking work during any week if

(1) The individual has engaged in a systematic and sustained effort to obtain work during the week, and

(2) The individual furnishes tangible evidence that he has engaged in this effort during the week.

f. The employment service shall refer any claimant entitled to extended benefits under this act to any suitable work which meets the criteria prescribed in paragraph c.

g. An individual who has been disqualified for regular benefits under the provisions of subsection (b) or (c) of *R.S. 43:21-5* will not meet the eligibility requirements for the payment of extended benefits unless the individual has had employment subsequent to the effective date of disqualification for regular benefits and has earned in employment remuneration equal to not less than four times the individual's weekly benefit rate.

h. (1) An individual claiming extended benefits who is an exhaustee, as defined under paragraph j. of section 5 of P.L.1970, c. 324 (*C. 43:21-24.11*), and who is

statute permits a finding of ineligibility for a claimant who was previously found ineligible, even if that prior determination is under appeal. Custin alleges that he saw a message online that indicated "Benefits Exhausted," and that thereafter, he was disqualified for benefits because he was "determined to be disqualified or ineligible for benefits on a previous claim." (Compl. ¶¶ 8-9)

N.J.S.A. § 43:21-24.19 concerns ineligibility for extended benefits. The statute provides that an individual found to be disqualified for regular benefits under N.J.S.A. § 43:21-5 "will not meet the eligibility requirements for the payment of extended benefits" unless certain conditions are met. *See* N.J.S.A. § 43:21-24.19(g). The statute also provides that an individual who is an "exhaustee," defined as one who has received all of the regular benefits available to him, "shall be disqualified for extended benefits" unless certain conditions are met. *See id.* § 43:21-24.19(h).

Again, it is clear that Custin is aggrieved by being denied benefits under these substantive provisions. It is not clear from the complaint how these provisions violate the Social Security Act's procedural requirement that a

---

subsequently discharged or suspended for misconduct connected with his work as provided in subsection (b) of *R.S. 43:21-5*, shall be disqualified for extended benefits for the week in which the separation occurs and for each week thereafter until he has earned in employment remuneration equal to at least four times his weekly extended benefit rate, notwithstanding the disqualifying period for regular benefits for misconduct imposed under the provisions of subsection (b) of *R.S. 43:21-5*.

(2) An individual claiming extended benefits who is an exhaustee, as defined under paragraph j. of section 5 of P.L.1970, c. 324 (*C. 43:21-24.11*), but has satisfied the requirements of subparagraph c.(3)(c) of this section concerning prospects for employment, and who subsequently fails without good cause either to apply for available, suitable work when so directed by the employment office or the director or to accept suitable work as defined in subsection (c) of *R.S. 43:21-5* when offered to him, or to return to his customary self-employment when directed by the director, shall be disqualified for extended benefits. The disqualification shall be only for the week in which the refusal occurs and for each week thereafter, until he has earned in employment remuneration equal to at least four times his weekly extended benefit rate, notwithstanding the disqualifying period for regular benefits for the refusal normally imposed under the provisions of subsection (c) of *R.S. 43:21-5* or the disqualification imposed in paragraph b. of this section for individuals who have not satisfied the requirements of subparagraph c.(3)(c) of this section.
N.J.S.A. § 43:21-24.19.

state's administrative processes function reasonably to ensure payment of benefits *when* they are due.

In my prior Opinion, I found that Custin had failed to allege a cognizable claim under the "when due" clause of the Social Security Act. On reconsideration of the same contentions, I reach the same conclusion.

2. Eighth Amendment Claim

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." As I explained in my prior opinion, the Eighth Amendment does not apply here because it is applies to bail, fines, criminal punishment, and closely allied penalties. (ECF no. 82, Opinion at 11) Here, Custin alleges that "disqualification from EB benefits is unusual and is unconstitutional under [the Eighth Amendment] because it disqualifies a claimant twice on the same charge." (Compl. ¶ 9) Custin objects to the fact that one of his applications for benefits was denied on the basis that he had previously been determined to be ineligible on a prior claim, although he was appealing that prior determination. Even given a liberal construction, these allegations cannot be said to relate to bail, fines criminal punishment, or anything closely analogous to them. Accordingly, Custin has failed to state a claim under the Eighth Amendment.

3. Due Process Claim

Finally, Custin appears to contend that the two state statutes cited above deprive persons of property without due process of law, and that the NJDOL and its Board of Review violated his due process rights. "Procedural due process imposes constraints on governmental decision which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893 (1976). Unemployment benefits are considered to be property interests. *See Wilkinson*, 627 F.2d at 664 ("State statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process.").

It is not clear how the two statutes in themselves work a due process violation. (*See* ECF no. 82, Opinion at 12). Custin has alleged, however, that the NJDOL and the Board of Review committed various due process violations, including (1) failing to provide Custin with a copy of all documents used in his hearings (Compl. ¶¶ 2, 3, 11), (2) failing to notify Custin of his appellate rights (Compl. ¶¶ 5, 6, 7), (3) failing to provide proper notice of hearings (Compl. ¶ 10), and (4) failing to properly consider a settlement payment in determining eligibility for benefits (Compl. ¶¶11-14). At this stage of the proceedings, I find these allegations sufficient to state a claim. The State Defendants contend that Custin has received "all the process that is due," but I cannot determine whether that is the case without the benefit of discovery. I will therefore deny the motion to dismiss as to Custin's due process claim.

**CONCLUSION**

For the reasons set forth above, the State Defendants' motion to dismiss is granted to the extent that Defendant NJDOL is dismissed from this action, and that the claims based on the Eighth Amendment and the Social Security Act are dismissed with prejudice. The motion is otherwise denied. An appropriate Order follows.

Dated:  March 22, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.