# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOHN M. CUSTIN,

    Plaintiff,

  v.

HAROLD J. WIRTHS, JOSEPH SIEBER, GERALD YARBROUGH, JERALD L. MADDOW, et al.,

    Defendants.

Civ. No. 2:12-cv-910-KM-MAH

OPINION

## MCNULTY, U.S.D.J.:

  The plaintiff, John M. Custin, alleges that various New Jersey state officials deprived him of his constitutional right to due process in the course of denying his claims for unemployment benefits. Defendant Harold J. Wirths was the Commissioner of the New Jersey Department of Labor, and Defendants Joseph Sieber, Gerald Yarbrough, and Jerald Maddow were members of the Board of Review for unemployment claims. These defendants, represented by the New Jersey Attorney General's office, collectively move for summary judgment as to the remaining claims against them.

  In two previous opinions on this matter, I dismissed several claims against these defendants as well as against other parties. (DE 82, 130). Familiarity with those prior opinions is assumed. This motion for summary judgment addresses all remaining due process claims. The accompanying order invites the parties to identify any issue which they believe remains open and undecided.

  Defendants contend that Custin has not raised a triable issue of fact that would demonstrate his due process rights were violated in the course of any of his claims for unemployment benefits. For the reasons herein, Defendants' motion will be granted.

## I. Background[1]

Plaintiff John M. Custin filed a lawsuit alleging a variety of harms relating to denial of his multiple claims for unemployment benefits. (DSMF ¶ 1). The remaining Defendants are Harold Wirths, Joseph Sieber, Gerald Yarbrough, and Jerald Maddow (the "State Defendants"). (DSMF ¶ 6). The suit was filed against a number of federal and state officials, but the only remaining claim is one under 42 U.S.C. § 1983 against the State Defendants in their individual capacities. (DSMF ¶¶ 2, 6)). Defendant Wirths was the Commissioner of the New Jersey Department of Labor, and Defendants Sieber, Yarbrough, and Maddow were members of the Board of Review for unemployment claims. (DSMF ¶ 8).

Custin was discharged from employment at Wal-Mart on April 26, 2010. (DSMF ¶ 12). Thereafter, he filed a claim for unemployment benefits with the New Jersey Department of Labor, Division of Unemployment Insurance. (*Id.*). Initially, a Deputy Director of the Division of Unemployment Insurance deemed Custin eligible for unemployment benefits. (DSMF ¶ 13). However, Wal-Mart appealed this determination to the Appeal Tribunal. (DSMF ¶ 14). The Appeal Tribunal is the first appellate level within the New Jersey Department of Labor

---

[1]  For purposes of this motion, I consider the State Defendants' statement of material facts ("DSMF") (DE 233), Plaintiff SSC's responsive statement of material facts ("PRSMF") (DE 245), Plaintiff's separately numbered counter statement of facts ("CSMF") (DE 245), as well as documentary evidence. Facts not contested are assumed to be true.

Record items cited repeatedly will be abbreviated as follows:

AT Transcript= Transcript from Appeal Tribunal hearing on June 28, 2010 (DE 233-11)

AG Cert. = Certification of Rimma Razhba (counsel for State Defendants) (DE 233-5)

Pl. Opp. = Plaintiff John M. Custin's brief in opposition to State Defendants' motion (DE 244)

for deciding unemployment and temporary disability benefit disputes. (DSMF ¶ 8).

Custin received a notice scheduling the appeal for a telephone hearing on June 28, 2010. (DSMF ¶ 15). This notice specified two charges: "voluntary leaving" and "discharge for misconduct."[2] (*Id*.). During that hearing on June 28, 2010, a hearing officer heard testimony from Custin and a personnel manager from Wal-Mart, Beverly Shuck.[3] Custin was given an opportunity to cross-examine Shuck during the hearing. (DSMF ¶ 17). The hearing officer explained that the issues to be resolved were "voluntary leaving" and "discharge for misconduct." (DSMF ¶ 18). Shuck testified that Custin was terminated for being a "no call no show" for five consecutive days on which he was scheduled

---

[2]     The applicable statute, effective as of the time of Custin's application for benefits, reads in relevant part as follows:

An individual shall be disqualified for benefits:

(a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works four weeks in employment, which may include employment for the federal government, and has earned in employment at least six times the individual's weekly benefit rate, as determined in each case. This subsection shall apply to any individual seeking unemployment benefits on the basis of employment in the production and harvesting of agricultural crops, including any individual who was employed in the production and harvesting of agricultural crops on a contract basis and who has refused an offer of continuing work with that employer following the completion of the minimum period of work required to fulfill the contract.

(b) For the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the five weeks which immediately follow that week, as determined in each case. In the event the discharge should be rescinded by the employer voluntarily or as a result of mediation or arbitration, this subsection (b) shall not apply, provided, however, an individual who is restored to employment with back pay shall return any benefits received under this chapter for any week of unemployment for which the individual is subsequently compensated by the employer.

N.J. Stat. Ann. § 43:21-5 (eff. December 9, 2007 to June 30, 2010).

[3]     Custin refers to this individual as "Shupp" or "Schupp," but her name is listed in the Appeal Tribunal transcript and Defendants' briefing as "Shuck."

to work: April 17, 19, 21, 22, and 23, 2010.[4] (DSMF ¶ 19). She explained that Wal-Mart's policy required employees to call a designated number prior to the start of their scheduled shift if they anticipated being absent. (DSMF ¶ 20). Custin testified that he was aware of this call-out procedure. (DSMF ¶ 23). In his testimony, Custin admitted that that he did not report to work on April 17, 19, 21, 22, and 23, 2010. (DSMF ¶ 22). Further, he testified that he had used these call-out procedures successfully in the past without issue. (DSMF ¶ 28).

His defense of his actions was that he attempted to call the designated number on each of the five days but was unable to connect. (DSMF ¶ 24). He also attempted to call the store at which he worked, he said, but no one picked up there, either. (DSMF ¶ 25). He could not provide any telephone records or other verification of his attempts to call the store or the designated number. (DSMF ¶ 26). When asked about his failure to successfully call out, Custin replied that he thought he did as much as he had to do. (DSMF ¶ 29). In response to his contention that the phone system was not working, Shuck responded that no other employee had reported issues with the system "that day."[5] (AT Transcript at 20). The examiner also referred to two documents sent to her by Wal-Mart: an exit interview with Plaintiff and his attendance record. (DSMF ¶ 31). While Custin did not, evidently, receive copies of these

---

[4] Custin states that he is in no position to verify Shuck's testimony. I take him to be referring to the truth, or not, of her statements. A transcript of the testimony itself was attached as Exhibit F to the Defendants' motion for summary judgment. It does not seem to be disputed that Shuck testified.

[5] There is a potential ambiguity as to "that day." State Defendants claim that Shuck testified that there were no other issues reported "on each of those days." (DSMF ¶ 30). That is inaccurate; Shuck testified that the phone was working on one day in particular, later stating that she "just printed out the list from that day and there are nine people called out and would be tardy." (AT Transcript at 27). It is not clear which day she is referring to, and Plaintiff claims "that day" is in fact April 26, 2010—the day he was terminated. (PRSMF ¶ 42). However, Shuck also testified that "[w]e had no other problems and we did have other absences that day," which in context is referring to April 23, 2010, the day she allegedly called Custin to ask why he had not called out. (AT Transcript at 19-20).

documents prior to the hearing, he did not raise any issues regarding them at the time. (DSMF ¶ 31; PRSMF ¶ 32).

On July 6, 2010, the Appeal Tribunal issued a decision disqualifying Custin from unemployment benefits. (DSMF ¶ 33). The Tribunal found that Custin did not properly notify his employer of his absence for five consecutive work days, despite his awareness of the notification requirement. (DSMF ¶ 34). Custin appealed the decision to the Board of Review, which is the highest appellate level within the New Jersey Department of Labor for deciding unemployment and temporary disability benefit disputes. (DSMF ¶¶ 8, 35). The Board of Review consisted of Defendants Sieber, Yarbrough, and Maddow (the "Board of Review Defendants"). (DSMF ¶ 35). In a decision dated February 4, 2011, the Board of Review affirmed the decision of the Appeal Tribunal.[6] (*Id.*)

Custin then appealed the Board of Review's decision to the Superior Court of New Jersey, Appellate Division. (DSMF ¶ 36). The Appellate Division affirmed the Board of Review's decision. (*Id.*).

*Second Claim*

On or about December 4, 2011, Custin filed a claim for extended benefits. (DSMF ¶ 61). This claim was denied, and he appealed the decision to the Appeal Tribunal on December 21, 2011. (DSMF ¶ 62). On February 23, 2012, Custin participated in a telephone hearing with an examiner from the Appeal Tribunal. (*Id.*). The next day, the Appeal Tribunal affirmed the decision and deemed Plaintiff ineligible for extended benefits because he had not earned any wages after the effective date of his disqualification for regular benefits.[7] (DSMF ¶ 63).

---

[6]     Custin claims to dispute this fact, but not in the sense that he denies that the Board of Review affirmed the Appeal Tribunal's decision. Rather, he makes the point that "[t]he Board of Review had no authority to find on an incomplete and insufficient record." (PRSMF ¶ 35).

[7]     Custin admits this, but notes that the decision of the Appeal Tribunal rested on "monetary grounds" while the denial by the examiner on the second claim cited what he describes as "separation grounds." (PRSMF ¶ 63).

Custin appealed this decision to the Board of Review, which remanded the case to the Appeal Tribunal for additional testimony regarding monies Custin received in 2011 (*i.e.,* wage income that could provide a basis for extended benefits). (DSMF ¶ 64). The Appeal Tribunal held another hearing on September 12, 2012, during which Custin noted that he received a payment of $13,000 from Wal-Mart for the settlement of a discrimination lawsuit he filed at some point after his discharge. (DSMF ¶ 65).

The Appeal Tribunal again deemed Custin ineligible for extended benefits. The $13,000 settlement payment, it held, did not constitute wages, and Plaintiff did not perform any services for Wal-Mart after his April 26, 2010 discharge. (DSMF ¶ 66). He did not appeal this decision to the Board of Review.[8] (DSMF ¶ 67).

*Third Claim*

Custin filed another unemployment claim on March 11, 2012. (DSMF ¶ 72). Custin disputes many of the circumstances regarding this claim and whether he properly received notice of it, but ultimately the Appeal Tribunal held a hearing on August 29, 2012. (DSMF ¶ 75). In a decision dated August 30, 2012, the Appeal Tribunal affirmed Custin's ineligibility for benefits. (DSMF ¶ 78). He did not appeal this decision to the Board of Review. (DSMF ¶79).

*Fourth Claim*

Custin filed another unemployment claim on December 30, 2012. (DSMF ¶ 82). He was deemed ineligible for benefits "on the ground that he lacked sufficient base weeks or sufficient base year wages to establish a valid claim." (DSMF ¶ 83). He appealed this determination to the Appeal Tribunal, which held a hearing on March 15, 2013. (DSMF ¶ 84). The Appeal Tribunal affirmed the denial of benefits. (DSMF ¶ 85). Custin did not appeal this decision to the Board of Review. (DSMF ¶ 90).

---

[8]    Custin disputes this fact without an explanation. He does not appear to be asserting that he did in fact appeal the decision. (PRSMF ¶ 67). Rather, he seems to object to the Defendants' characterizations of, e.g., his reasons for not appealing. (PRSMF ¶¶79, 90).

## I. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met the threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine issues of material fact exist). In deciding a motion for summary judgment, the court's role is not to evaluate and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented

through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## II. Discussion

Custin raises due process issues with respect to his first, second, third, and fourth claims for unemployment benefits. The first claim for unemployment benefits arose from Custin's dismissal on April 26, 2010. As to that claim, the main issue was whether he had essentially been absent without leave for five days. The second, third, and fourth claims sought extended benefits. As to those, the main issue was whether, in the relevant period, Custin had earned wages, a prerequisite for an award of benefits.

In Section A, I consider Custin's due process claim with respect to the second, third, and fourth claims for unemployment benefits. In Section B, I consider his due process claim with respect to the original, first claim for benefits. Sections C and D dispose of miscellaneous issues.

### A. Due Process Violations: Second, Third, and Fourth Claims

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Unemployment benefits are considered to be property interests. *See Wilkinson v. Abrams*, 627 F. 2d 650, 664 (3d Cir. 1980) ("State statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process.").

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F. 3d 107, 116 (3d Cir. 2000). Available processes need not be followed when they are futile. *See id.* at 118 ("When access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim."). A plaintiff "cannot forego

attempting to use those processes simply because he thinks that they will be followed in a biased manner." *Id.* at 119. "This is true even when the plaintiff contends that one part of the process afforded him was biased, so long as there were avenues of review available to him." *Persico v. City of Jersey City*, 67 F. App'x 669, 675 (3d Cir. 2003).

For example, in *Alvin*, the plaintiff alleged that a public university failed to provide him due process in depriving him work-related privileges. The plaintiff argued that, based on his experience with the university, he believed the grievance process would be constitutionally inadequate. *Id.* at 118. Indeed, "[t]he record support[ed] his argument that the informal proceedings were painfully slow, and that several letters he wrote were not responded to, and even that several members of the [university] faculty and administration were disposed against his claim." *Id.* at 119. Still, the Third Circuit found that there was "simply insufficient evidence that the formal hearing would not be held in a fair and impartial manner." *Id.*

This court has previously outlined the applicable process for unemployment claims:

> New Jersey has a "process on the books that appears to provide due process of which Plaintiff simply failed to avail himself. Under the [New Jersey Unemployment Compensation Act, N.J.S.A. 43:21-19(c)(1)], a claimant who is dissatisfied with a determination of benefits eligibility is entitled to file an administrative appeal to an Appeal Tribunal, before which tribunal the claimant may be represented by counsel and may cross-examine witnesses. N.J.S.A. 43:21–6(b)(1), 43:21–17(b). The decision of the Appeal Tribunal is, in turn, appealable to the Board of Review, N.J.S.A. 43:21–6(e), and the final decision as to a claimant's entitlement to benefits is appealable to the Appellate Division under N.J. Ct. R. 2:2–3(a)(2).

*Akuma v. New Jersey Comm'r of the Dep't of Labor and Workforce Dev.*, No. 07-1058, 2008 WL 4308229, at *2 (D.N.J. Sept. 17, 2008) (quotation omitted).

Plaintiff did not take proper advantage of this appeals process for his second, third, and fourth claims, however; in the words of *Alvin,* he has not "taken advantage of the processes that are available to him . . . ." 227 F. 3d at 116. As noted above, Custin did not pursue the third and fourth claims beyond

9

the Appeal Tribunal at all. Interestingly, as to the second claim, he did pursue further administrative appeals, obtained a remand and a new decision, but then went no farther than the Appeal Tribunal. *See* pp. 5–6, *supra*. So even assuming there was error at some stage of the process, his failure to pursue the available means of correction generally cuts off a due process claim.

Still, a plaintiff may retain a due process claim if the forgone processes "are unavailable or patently inadequate." *Id*. No claim of "unavailability" can be sustained here. In fact, Custin appealed his first claim all the way to the Appellate Division, and took his second claim up and down the administrative appeal ladder. There is no showing that, as to the second, third, and fourth claims, his access to the appeals process was "blocked." The claim, then, must be that the processes were "inadequate"— in effect, a "sham." *Id. at* 117–18.

I construe Plaintiff's materials liberally given his *pro se* status. In Custin's briefing and responsive statement of undisputed material facts, he makes the following claims regarding the efficacy of the appellate process for his second, third, and fourth claims:

1. He was not notified of the legal basis for his initial disqualification for the second claim in advance of his hearing with the Appeal Tribunal, and therefore could not prepare an adequate defense. (PRSMF ¶ 62).

2. The affirmation by the Appeal Tribunal for the second claim was based on different legal grounds than the grounds stated in the initial notice of ineligibility. (PRSMF ¶ 63).

3. After the second claim had been appealed to the Board of Review and remanded to the Appeal Tribunal for additional testimony, the decision of the Appeal Tribunal denying the claim stated no New Jersey law that the $13,000 he received should not qualify as wages. (PRSMF ¶ 66).

4. Denial of the second claim meant that he was being disqualified twice on the same charge. (PRSMF ¶ 68).

5. The damaging effect of the loss of benefits due to the denial of the second claim was disproportionate to the "purported offense" of not calling in to Wal-Mart. (PRSMF ¶ 68).

6. The result of denial of the second claim was an unfair application of law. (PRSMF ¶ 70).

7. He was not properly notified of the date and time of the initial hearing for his third claim. (PRSMF ¶ 74).

8. The decision by the Appeal Tribunal affirming denial of his third claim was arbitrary and did not state any New Jersey law that the $13,000 he received should not qualify as wages. (PRSMF ¶ 78).

9. He "was given every reason to believe from the experience with his claims that state agencies such as the [New Jersey Department of Labor] and its administrative proceedings and Boards were blind to offenses to constitutional due process of law." (PRSMF ¶ 79).

10. The "Notice to Claimant of Benefit Determination" regarding his fourth claim showed the wrong base year periods. (PRSMF ¶ 83).

11. During the Appeal Tribunal hearing for his fourth claim, the examiner failed to ask questions that would have confronted the issue of whether the $13,000 he received should qualify as wages. (PRSMF ¶ 84).

12. The decision by the Appeal Tribunal affirming denial of his fourth claim was arbitrary and did not state any basis under New Jersey law that the $13,000 he received should not qualify as wages. (PRSMF ¶ 78).

Legal or factual errors allegedly made by various Appeal Tribunals or other officials do not equate to a finding that the appeals process itself was faulty. For example, Custin has not shown that the Board of Review failed to give him the opportunity to appeal or present his case. Even less pertinent is Plaintiff's oft-expressed feeling that the Board of Review or the courts *would have* issued an incorrect decision if the matter were presented to them.

Even on their face, Plaintiff's claims tend to defeat themselves. The second claim, for example, relates that the Board of Review responded favorably to his proffer of additional evidence and remanded the case. After the Appeal Tribunal had initially affirmed denial of the claim, Custin sent a letter to the Board of Review requesting that they remand his case to the Appeal Tribunal. (CSMF ¶ 217). He attached to this letter a copy of a W2 form he had recently received from Wal-Mart, which, to him, showed that the Appeal Tribunal erred in concluding he had not received wages in the relevant period. (*Id*.). In response, the Board of Review remanded the case for further fact finding on this issue. (CSMF ¶ 221). An Appeal Tribunal hearing then in fact occurred on September 12, 2012. (CSMF ¶ 225). Plaintiff chose not to appeal this decision to the Board of Review, but there is no dispute that he was able to participate in the appeals process. This was anything but a sham.

Issue seven above is the only point that approaches a demonstration of a defect in the actual process of appeal. Custin claims that he was not properly given notice of a March 26, 2012 hearing on the "monetary" issue. (CSMF ¶¶ 242-246).[9] Plaintiff did receive a hearing before the Appeal Tribunal on August 29, 2012. (PRSMF ¶ 75). Custin's grievance, not always clearly expressed, seems to be that this appeal was irregular because it concerned the "monetary" hearing of which he had not received proper notice. (CSMF ¶ 257). If that was a procedural error, it should have been asserted as such. It was surely correctable within the procedures made available to Custin. There is no reason why he could not have raised this issue to the Board of Review, or, if necessary, the Appellate Division. Plaintiff knew that the Board, faced by claims of procedural error or additional evidence, had been willing to remand to the Appeal Tribunal previously.

---

[9]     He states that he was only notified of a separate hearing on another issue, the "separation" issue, scheduled for March 29, 2012. The March 29, 2012 hearing apparently did not take place, for reasons that appear of record. Custin received a letter from an "ETA Region 1 Administrator" explaining that the determination that he did not receive wages, and was therefore monetarily ineligible, rendered the March 29, 2012 fact-finding interview on the separation issue unnecessary. (CSMF ¶ 245).

Plaintiff stated that he did not appeal his third claim to the Board of Review because "now it's headed for the U.S. Courts and not the State Courts, which apparently, don't do anything in regard to insuring due process of law at its proceedings." (DSMF ¶ 79; PRSMF ¶ 79). The choice to abandon state remedies in favor of a federal lawsuit was Custin's. Nothing in this statement, however, establishes that state remedies were unavailable or illusory, even if Custin was dissatisfied with the results he was getting.

Having reviewed Plaintiff's statement of facts and legal arguments, I see no evidence that the appeals process for his second, third, and fourth claims was unconstitutionally inadequate. That being the case, because he did not take advantage of the appeals process available to him, he cannot claim to have been denied due process.

### B. Due Process Violations: First Claim

Regarding his first claim for unemployment benefits, Custin did pursue the available state procedures. That process culminated in an appeal to the New Jersey Superior Court, Appellate Division, which affirmed the denial of benefits. Thus as to the first claim, in contrast with the second, third, and fourth claims, it is possible to make a more meaningful assessment of his claim to have been denied due process.

"The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Claimants are constitutionally obligated "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 332. Further, due process "entitles a person to an impartial and disinterested tribunal . . . ." *Marshall v. Jericho*, 446 U.S. 238, 242 (1980). Custin has not provided, nor can I discover, any authority in this circuit that defines the process constitutionally required in connection with a denial of unemployment benefits. However, the Third Circuit has provided guidance in somewhat analogous contexts.

One such context is review of local zoning board decisions. *See, e.g.*, *Koynock v. Lloyd*, 405 F. App'x 679 (3d Cir. 2011); *DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F. 3d 592 (3d Cir. 1995); *Rogin v. Bensalem Twp.*, 616 F. 2d 680 (3d Cir. 1980). No process, of course, is free from error, and zoning board decisions are no exception. In *DeBlasio*, however, the Third Circuit held that "a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." 53 F. 3d at 597.

Another analogous context is review of public employee terminations. *See, e.g.*, *Beckwith v. Pennsylvania State Univ.*, 672 F. App'x 194 (3d Cir. 2016); *Thomas v. Delaware State Univ.*, 626 F. App'x 384 (3d Cir. 2015); *Biliski v. Red Clay Consol. School Dist. Bd of Educ.*, 574 F. 3d 214 (3d Cir. 2009). In *Biliski*, the Third Circuit echoed the Supreme Court's holding that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 574 F. 3d at 220 (quoting *Loudermill*, 470 U.S. at 546).

Finally, the Third Circuit has also addressed the question of when error by a state administrative body may be attacked as a due process violation. In a recent case, the plaintiff complained that the Director of the Division of Family Development overrode a favorable decision by an administrative law judge without evidentiary support. *Brown v. Camden Cnty. Bd. of Soc. Servs.*, 704 F. App'x 204, 206 (3d Cir. 2017)[10]. The court noted that the plaintiff (like Custin) had the option to seek review of the administrative decision by the New Jersey Appellate Division. The availability of that recourse for correction of error negated a due process claim, as "[t]he judicial remedy provided is no doubt adequate." *Id.* at 207.

Custin outlines a wide array of perceived procedural defects in the adjudication of his first claim, many of which are summarized below:

---

[10]     The Third Circuit designated *Brown* as a nonprecedential decision. It is cited for its persuasive value.

1. The Appeal Tribunal wrongly allowed Wal-Mart to appeal the default judgment in his favor after Wal-Mart declined to respond to the claim examiner's questions. (CSMF ¶ 23).

2. The Appeal Tribunal allowed Wal-Mart to file an appeal despite its faxing in the request a day late. (CSMF ¶ 34).

3. He was never provided with the documents Wal-Mart intended to use as evidence against him during the Appeal Tribunal Hearing, some of which were faxed in advance to the Appeal Tribunals. (CSMF ¶ 1).

4. The notice for his initial claims hearing, while indicating that he "may have been discharged for misconduct connected to the work" did not indicate "what entity or individual was making this charge." (CSMF ¶¶ 14, 15).

5. He never received a copy of Wal-Mart's protest letter which led to the Appeal Tribunal hearing. (CSMF ¶ 29).

6. He did not receive notice that a witness would testify against him at the Appeal Tribunal hearing. (CSMF ¶ 29).

7. One of the two issues docketed to be determined at the Appeal Tribunal hearing was whether the claim could be denied for "misconduct connected to the work," despite default judgment having been entered on that issue. (CSMF ¶ 36).

8. The issues docketed for the Appeal Tribunal hearing were so broad in scope that he could not prepare an adequate defense. (CSMF ¶ 43).

9. The Appeal Tribunal did not give him information on how to seek to dismiss the issue of "voluntary leaving" on appeal. (CSMF ¶¶ 52-59).

10. Wal-Mart provided a different witness at the hearing than the person they indicated would be testifying in their protest letter to the Appeal Tribunal. (PRSMF ¶ 17).

11. The Appeal Tribunal should never have considered the "callout list" that Shuck printed out during the hearing. (CSMF ¶ 81).

12. His attendance record and exit interview were never entered into the record by the Appeal Tribunal. (CSMF ¶¶ 89-90).

13.    The Board of Review submitted a review of his appeal to "an unknown deputy 'reviewer,'" thereby delegating a task reserved for Board of Review members to someone "not meeting the civil service requirements for a Board member." (CSMF ¶¶ 92-94).

14.    The unknown reviewer for the Board of Review failed to detect the errors in the Appeal Tribunal record. (CSMF ¶ 95).

15.    Shuck's testimony was insufficient for any reviewer to conclude that Wal-Mart's call-out system was functional, since it was ambiguous which day she was referring to when she stated others had no problems calling in. (CSMF ¶ 132).

Despite this lengthy list of putative procedural defects, Custin still has not shown that he was denied due process. Analyzing his case under general principles of due process and the analogous cases cited above, I find that he was given notice and an opportunity to respond prior to the denial of his benefits. He was given an explanation of the evidence against him and an opportunity to present his side of the story. He was afforded the opportunity to cross-examine Shuck, the witness who testified on behalf of his employer. He was also given, and took advantage of, the remedy of full judicial review to rectify possible errors by an administrative body.

Nowhere does Custin claim that he was denied participation in the administrative process or an opportunity to present his case. Following his appeal of the Board of Review's decision, the New Jersey Appellate Division analyzed his original claim as well as potential procedural defects in its adjudication. The Appellate Division's opinion considered the claim, reasserted here, that certain documents were not entered into the record or provided in advance of the hearing. It considered the claim that he was not on proper notice of the issues being determined. In a reasoned decision, that court rejected those claims. Notice, it found, had been given, the claim as to the documents had not been preserved, and in any event the documents were far from critical to his case. (AG Cert., Ex. H). However disappointing to the

plaintiff, this decision is not evidence of any procedural infirmity—quite the opposite, in fact.

Moreover, many of Custin's criticisms of the administrative process are simply incorrect. He argues that there never should have been an Appeal Tribunal appeal because Wal-Mart failed to respond to the initial request for information. But employers may provide new information, even after an initial determination. *See* N.J. Stat. Ann. § 43:21-6(b)(1).[11] He also claims Wal-Mart's appeal should have been dismissed as untimely. But Wal-Mart appealed within 10 days from the day after the determination was mailed. (AG Cert., Ex. E at 2). *See* N.J. Stat. Ann. § 43:21-6(b)(1) (appeal must be filed "within 10 calendar days after such notification was mailed . . . .").

To show that New Jersey's process was insufficient, Custin cites to a Tenth Circuit case concerning the Colorado unemployment benefits system. The plaintiff in that case was denied unemployment benefits after a hearing at which his employer testified. *Shaw v. Valdez*, 819 F. 2d 965, 968 (10th Cir. 1987). Prior to the hearing, the plaintiff had received only a simple notice indicating the time and place of the hearing, as well as the fact that it would discuss "[a]ll issues and factual matters affecting claimant's eligibility . . . ." *Id.* The Tenth Circuit concluded that this notice was insufficient, since the claimant was caught unaware at the hearing as to the reasons for his termination and the basis for denial of benefits. *Id.* at 969. This case is

---

[11] The relevant section provides:

> Whenever an initial determination is based upon information other than that supplied by an employer because such employer failed to respond to the deputy's request for information, such initial determination and any subsequent determination thereunder shall be incontestable by the noncomplying employer, as to any charges to his employer's account because of benefits paid prior to the close of the calendar week following the receipt of his reply. *Such initial determination shall be altered if necessary upon receipt of information from the employer,* and any benefits paid or payable with respect to weeks occurring subsequent to the close of the calendar week following the receipt of the employer's reply shall be paid in accordance with such altered initial determination.

N.J. Stat. Ann. § 43:21-6(b)(1) (emphasis added).

inapposite for several reasons. First, the plaintiff in *Shaw* argued that Colorado's statutory procedures were facially insufficient, not that individual state actors deprived him of due process. Second, that plaintiff was not claiming a due process violation, but the state's failure to provide him a "fair hearing" as required by the Social Security Act. Third, that plaintiff was presented for the first time during the hearing with certain reasons for his termination, having previously been given different reasons.

Here, although the record is not clear on what Custin was told by Wal-Mart upon termination, he was fully aware that the Appeal Tribunal hearing would encompass the issue of discharge related to misconduct.[12] This charge was sent to him in a letter and repeated at the beginning of the hearing. (PRSMF ¶ 15; AT Transcript at 4-6). Custin cannot claim the same lack of notice as the plaintiff in *Shaw*, despite his belief that the Appeal Tribunal improperly docketed the issue of workplace misconduct.

The Appeal Tribunal process was less than ideal in some respects. The documents faxed over by Wal-Mart prior to the hearing ought to have been entered into the record and provided to Custin prior to the hearing. *See* N.J.A.C. 1:12-14.6(d)[13]. But he has not shown that this error dragged the

---

[12]   Custin argues that Wal-Mart did not in fact assert the "misconduct" charge, which somehow originated from the Appeal Tribunal itself. At any rate, that does not negate the fact that he was given notice of the charges, as the Appellate Division found. (AG Cert., Ex. H at 15).

[13] The subsection reads as follows:

> Any party that intends to offer documentary or physical evidence at the telephone hearing shall submit a copy of that evidence to the Board of Review or appeal tribunal and all other interested parties immediately upon receipt of notice of the scheduled telephone hearing. Also, the requesting party shall provide timely notice of this request to offer evidence to all other interested parties.

> 1. Any evidence not submitted as required in this subsection may be admitted at the discretion of the Board of Review or the appeal tribunal provided that such evidence is submitted to the Board of Review or appeal tribunal and all other parties within 24 hours of the telephone hearing.

proceedings below the federal constitutional floor of due process. And indeed, it is highly unlikely that these claimed errors even affected the outcome. The documents were not necessary to deny his claim. His attendance record was superfluous since he admitted he was absent for five consecutive work days. The exit interview document, even if submitted belatedly, could only be considered favorable to Custin's case, and Shuck testified that the exit interview reported him as re-hireable.[14] Even the "call-out list" was not evidence of his misconduct. It was merely additional evidence that Shuck used to bolster her sworn testimony that others had successfully used the call-out number, refuting Custin's testimony that he attempted to call in for five days, but the phone line malfunctioned.[15] These alleged errors did not amount to an overall unconstitutional deprivation of due process.

Ultimately, the critical evidence for and against Custin was amply explored. He was aware of the policy that he needed to call in prior to missing a scheduled shift. He failed to do so for five consecutive work days. Custin may believe that his proffered excuses and defenses should have prevailed, but a

---

2. The other parties shall have 24 hours from the time of receipt of the evidence to properly respond to its admission and use.

3. Upon review of the evidence, the Board of Review or the appeal tribunal shall determine if the telephone hearing shall be continued.

N.J.A.C. § 1:12-14.6(d).

[14]     Custin claims that the Appeal Tribunal examiner used the exit interview to corroborate Shuck's testimony regarding the precise dates of his absence. (Pl. Opp. at 20-21). Even so, he did not then dispute those dates, nor does he dispute them now.

[15]     Custin cites a case from the Commonwealth Court of Pennsylvania finding a lack of due process when the plaintiff was not able to examine documents that a witness referred to in the course of a telephone hearing. (Pl. Opp. at 18-19). This state court opinion is not binding precedent on this constitutional due process claim, nor is it entirely relevant. Custin has not shown any authority that the Appeal Tribunal hearing needed to comport with any particular rules of evidence. In fact, "the conduct of hearings and appeals shall be in accordance with rules prescribed by the board of review for determining the rights of parties, *whether or not such rules conform to common law or statutory rules of evidence* and other technical procedures." N.J. Stat. Ann. § 43:21-6(f) (emphasis added).

variety of tribunals (who are not alleged to be biased or conflicted) disagreed. That there may have been some procedural imperfections in the adjudication of his claim does not negate the overall adequacy of the process he was afforded. He had notice of and an opportunity to defend himself at an impartial hearing. To the extent he believed the procedure or substance of the hearing was flawed, he also had the ability to appeal the findings of that hearing multiple times, ultimately to an independent judicial forum. Because the State Defendants did not interfere with Custin's right to that process, he cannot succeed in claiming they deprived him of it. Even assuming *arguendo* that the outcome was erroneous, which I do not, the process was not so defective as to give rise to a constitutional claim.

Viewing all of the facts in the light most favorable to the non-movant, I hold that, as a matter of law, the State Defendants have not violated Custin's due process rights. I grant summary judgment in favor of the State Defendants on the § 1983 deprivation of due process claims.

### C. Personal Liability and Qualified Immunity

Because Custin has failed to demonstrate a triable issue of fact with respect to his Due Process claim, I do not reach ancillary issues, such as the State Defendants' potential personal liability, or qualified immunity.

### D. State Defendants' Requests to Strike Certain Arguments

In their reply brief, the State Defendants argue that (i) Custin's opposition brief should be disregarded due to its excessive length; (ii) his Rule 56.1 responsive statement of material facts should be disregarded because it is overlong, improperly advances legal arguments, and fails to cite properly to the record; and (iii) his argument regarding Shuck's call-out list, along with other new arguments, should be disregarded since it was raised for the first time in his opposition brief and was not present in the operative complaint.

Because Custin appears *pro se,* I accept his filings as-is. I have considered his documents and arguments fully in reaching my decision on the merits.

### III. Conclusion

For the reasons set forth above, the State Defendants' motion for summary judgment (DE 233) is **GRANTED** in favor of Defendants on all claims based on alleged violations of the Due Process Clause of the Fourteenth Amendment.

An appropriate order follows. The order invites the parties, within ten days, to identify any issue which they believe remains open and undecided.

Dated:  March 25, 2020

/s/ Kevin McNulty

_____

**HON. KEVIN MCNULTY, U.S.D.J.**